```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ANDREA HANLIN CUPPLES,

                Plaintiff,               MEMORANDUM & ORDER
                                         13-CV-4501(JS)(AKT)
        -against-

VALIC FINANCIAL ADVISORS, INC.,

                Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Rick Ostrove, Esq.
                    Brett R. Cohen, Esq.
                    Leeds Brown Law, P.C.
                    One Old Country Road, Suite 347
                    Carle Place, NY 11514

For Defendant:      Robert D. Lipman, Esq.
                    David A. Robins, Esq.
                    Lipman & Plesur, LLP
                    500 North Broadway, Suite 105
                    Jericho, NY 11753-2131
```

SEYBERT, District Judge:

Currently pending before the Court is defendant Valic Financial Advisors, Inc.'s ("Defendant") motion to dismiss plaintiff Andrea Hanlin Cupples' ("Plaintiff") Complaint. For the following reasons, Defendant's motion is GRANTED.

BACKGROUND[1]

Plaintiff worked for Defendant as a Financial Advisor. (Compl. ¶ 9.) Prior to her employment with Defendant, Plaintiff had filed a charge with the Equal Employment Opportunity

---

[1] The following facts are primarily taken from Plaintiff's Complaint. Some additional facts have been taken from the parties' submissions pursuant to Rule 12(b)(1).

Commission ("EEOC") alleging age and gender discrimination, sexual harassment, hostile work environment, and wrongful termination against her former employer--Citistreet--and several employees, including Don Goldstein ("Goldstein"). (Compl. ¶ 8.)

Plaintiff apparently left Citistreet and engaged in discussions to work for Defendant. According to Defendant, on June 8, 2005, Plaintiff signed a Uniform Application for Securities Industry Regulation or Transfer ("Form U-4"). (Lipman Decl., Docket Entry 20, Ex. A.) The Form U-4 contains an arbitration clause, which states in pertinent part:

> I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs indicated in Section 4 . . . as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Lipman Decl. Ex. A at 3[2] (emphases in original).)

Plaintiff also signed a Registered Representative Agreement ("Agreement") with Defendant on April 28, 2005, effective on June 13, 2005. (Lipman Decl. Ex. B at 13.) Defendant did not sign the Agreement until July 12, 2005. (Lipman Decl. Ex. B at 13.) The Agreement contains a mandatory arbitration provision (Paragraph 11(a)) and an optional

---

[2] Page numbers refer to those provided by the Electronic Case Filing System.

arbitration provision (Paragraph 11(b)(2)). Paragraph 11(a), titled "Disputes between Registered Representative and Broker-Dealer," states:

> Disputes arising from or under the terms of this Agreement between Registered Representative and Broker-Dealer shall be resolved in accordance with the NASD's Code of Arbitration Procedures.[3] Should the NASD decline jurisdiction over any dispute between Registered Representative and Broker-Dealer, or should any dispute not be eligible for submission to the NASD under its Code of Arbitration Procedures, such dispute shall be resolved under subparagraph 11.b., below.

(Lipman Decl. Ex. B at 11.) Paragraph 11(b) is titled "Other Disputes." Subsection (b)(1) states:

> All other disputes arising from or under the terms of this Agreement, including, without limitation, all disputes with any Affiliated Company and/or Protected Company that is not a member of the NASD shall be resolved in a court of competent jurisdiction.

(Lipman Decl. Ex. B at 11.) Subsection (b)(2) allows for parties to mutually agree to arbitration for certain disputes. It states in relevant part:

> Notwithstanding the provisions of paragraph b.(1), Registered Representative and Broker Dealer, any Affiliated Company or any Protected Company (or combination thereof) may mutually agree that any dispute under this subparagraph b., whether raised by Broker-Dealer, a Protected Company,

---

[3] The Financial Industry Regulatory Authority, Inc. ("FINRA") has since succeeded National Association of Securities Dealers ("NASD").

3

> Affiliated Company or Registered Representative, shall be submitted to binding arbitration, including, without limitation, claims of employment discrimination pursuant to federal, state, or local discrimination laws.

(Lipman Decl. Ex. B at 11.)

Plaintiff and Defendant continued with their employment agreement for a period of time, seemingly without incident. On January 26, 2006, however, Plaintiff learned that Defendant had hired Goldstein as her direct supervisor. (Compl. ¶¶ 10-11.) Eventually, Goldstein and/or Defendant hired all of the individuals that Plaintiff had named in her prior EEOC charge regarding Citistreet. (See generally Compl.) Plaintiff complained on several occasions, and on April 30, 2010, she filed a charge with the EEOC alleging retaliation in connection with events surrounding Goldstein and Defendant's limitation of Plaintiff's territory. (Compl. ¶ 30.) On May 14, 2010, Defendant interviewed Plaintiff regarding her EEOC charge. (Compl. ¶ 33.) On June 30, 2010, her employment was terminated. (Compl. ¶ 34.)

Plaintiff now alleges a single claim for retaliation pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII").

DISCUSSION

Defendant seeks dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as well as the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). The Court will first address the applicable legal standards before turning to Defendant's motion specifically.

I. Legal Standards

A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008). The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of Plaintiffs because subject matter jurisdiction must be shown affirmatively. See id.; Atlanta Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992); Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). "A plaintiff asserting subject matter jurisdiction has the burden of proving

by a preponderance of the evidence that it exists." Makarova, 201 F.3d at 113.

B. Arbitration

Insofar as Defendant seeks dismissal pursuant to Rule 12(b)(6), the Court considers the motion one to compel arbitration. See Wabtec Corp. v. Faiveley Trans. Malmo AB, 525 F.3d 135, 140 (2d Cir. 2008) (holding that a motion to dismiss may be construed as a motion to compel arbitration); 75-07 Food Corp. v. Trs. of United Food & Commercial Workers Local 342 Health Care Fund, No. 13-CV-5861, 2014 WL 691653, at *4 (E.D.N.Y. Feb. 24, 2014) ("'[F]or purposes of deciding the instant motion, the Court will do as a number of other courts have done and construe the Respondent's motion to dismiss as a motion to compel arbitration.'" (quoting Jillian Mech. Corp. v. United Serv. Workers Union Local 355, 882 F. Supp. 2d 358, 363 (E.D.N.Y. 2012)).

In the context of a motion to compel arbitration under the FAA, the Court "applies a standard similar to that applicable for a motion for summary judgment" pursuant to Federal Rule of Civil Procedure 56. Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); see Brown v. St. Paul Travelers Cos., 559 F. Supp. 2d. 288, 291 (W.D.N.Y. 2008) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of how

the party that favors arbitration styles its motion." (internal quotation marks and citations omitted)), aff'd 331 F. App'x 68 (2d Cir. 2009). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4).

Granting summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

"The burden of showing the absence of any genuine dispute as to a material fact rests on the party seeking summary judgment." Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jillian Mech. Corp., 882 F. Supp. 2d at 364 ("On a motion to compel arbitration, the moving party has the initial burden of showing that an agreement to arbitrate exists."). A genuine factual

7

issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. To defeat summary judgment, "the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 256). "[M]ere speculation or conjecture as to the true nature of the facts" will not overcome a motion for summary judgment. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) ("Mere conclusory allegations or denials will not suffice." (citation omitted)); Weinstock, 224 F.3d at 41 ("[U]nsupported allegations do not create a material issue of fact.").

II. Defendant's Motion

Defendant asserts that Plaintiff's Complaint should be dismissed for three reasons: (1) Plaintiff signed the Form U-4 agreeing to mandatory arbitration of the dispute in question; (2) Plaintiff also signed the Agreement requiring mandatory arbitration; and (3) the arbitration language makes clear that the issue of arbitrability is for the NASD (now FINRA) arbitrators to decide and not the Court. The Court will address each issue in turn.

A. The Form U-4

As noted, Defendant maintains that the Form U-4 governs, which provides, inter alia, that Plaintiff agrees to arbitrate any dispute, claim or controversy between herself and Defendant that is required to be arbitrated. (See Lipman Decl. Ex. A at 3; supra p. 2.) Plaintiff counters that the Agreement superseded the Form U-4. The Court finds that both contracts apply.

New York law governs the issue of "[w]hether an arbitration agreement between a broker-dealer and a registered representative may supersede a prior arbitration agreement between the registered representative and [a Self-Regulating Organization (SRO)] . . . ." Credit Suisse First Boston Corp. v Pitofsky, 4 N.Y.3d 149, 154, 824 N.E.2d 929, 791 N.Y.S.2d 489 (2005); see Doctor's Assocs. v. Casarotto, 517 U.S. 681, 686-87, 116 S. Ct. 1652, 1656 (1996) ("[T]he text of § 2 [of the FAA] declares that state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." (internal quotation marks and citations omitted) (emphasis in original)). Under New York law, it is recognized that a later contract "regarding the same subject matter supersedes the prior contract." Kreiss v. McCown De Leeus & Co., 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999) (internal quotation marks and citation omitted). Specifically,

"an arbitration agreement between a broker-dealer and a registered representative may modify a Form U-4 agreement . . . ." Credit Suisse First Boston Corp., 4 N.Y.3d at 155, 824 N.E.2d 929, 791 N.Y.S.2d 489.

Here, the Agreement is subsequent to the Form U-4. However, there is no need to decide whether the Agreement supersedes the Form U-4 because the contracts do not conflict with one another. See Bailey v. Chase Sec., Inc., No. 01-CV-7222, 2002 WL 826816, at *3 (S.D.N.Y. May 1, 2002) (finding that the contracts did not conflict where the "employment notice contain[ed] an agreement to arbitrate all employment-related disputes between plaintiff and Chase, whereas the U-4 form contains an agreement to arbitrate only those disputes that are required to be arbitrated under the amended NASD Code" (emphasis omitted)); Chanchani v. Salomon/Smith Barney, Inc., No. 99-CV-9219, 2001 WL 204214, at *5 (S.D.N.Y. Mar. 1, 2001) ("[T]he Court can give effect to both agreements because there is no conflict between the two--the terms of the U-4s and the NYSE rules in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees."). The Agreement simply narrows slightly the scope of the arbitration clause in the Form U-4. See Bailey, 2002 WL 826816, at *3 ("The fact that the U-4 agreement covers a smaller

subset of disputes than the employment notice does not necessarily mean that the two agreements are in conflict.").

In any event, since the Agreement is the later and more tailored of the two contracts, the Court will center its focus on the arbitration provisions contained therein.

B. <u>The Agreement</u>

Defendant maintains that this action should be dismissed because the Agreement contains a mandatory arbitration provision, Paragraph 11(a), which governs. Plaintiff primarily argues that Paragraph 11(a) does not apply and that only Paragraph 11(b), providing for optional arbitration, is relevant. The Court agrees with Defendant in this regard.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT&T Techs. v. Commc'ns. Workers of Am.</u>, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986) (internal quotation marks and citation omitted). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>Id.</u> at 649, 106 S. Ct. at 1418, 89 L. Ed. 2d 648; <u>see also</u> <u>BG Group PLC v. Republic of Arg.</u>, 134 S. Ct. 1198, 1206 (2014) ("[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"); <u>PaineWebber Inc. v. Bybyk</u>, 81 F.3d 1193,

subset of disputes than the employment notice does not necessarily mean that the two agreements are in conflict.").

In any event, since the Agreement is the later and more tailored of the two contracts, the Court will center its focus on the arbitration provisions contained therein.

B. <u>The Agreement</u>

Defendant maintains that this action should be dismissed because the Agreement contains a mandatory arbitration provision, Paragraph 11(a), which governs. Plaintiff primarily argues that Paragraph 11(a) does not apply and that only Paragraph 11(b), providing for optional arbitration, is relevant. The Court agrees with Defendant in this regard.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT&T Techs. v. Commc'ns. Workers of Am.</u>, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986) (internal quotation marks and citation omitted). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>Id.</u> at 649, 106 S. Ct. at 1418, 89 L. Ed. 2d 648; <u>see also</u> <u>BG Group PLC v. Republic of Arg.</u>, 134 S. Ct. 1198, 1206 (2014) ("[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"); <u>PaineWebber Inc. v. Bybyk</u>, 81 F.3d 1193,

1198 (2d Cir. 1996) ("Where the arbitration agreement contains an ambiguity as to who determines eligibility, the [FAA's] presumption favoring arbitration is reversed so that the court will ordinarily decide the question." (emphasis in original)). To overcome this presumption it must be shown that the parties had a clear and unmistakable intent to submit issues of arbitrability to the arbitrators. See Contec Corp. v. Remote Solution, Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (quoting Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002)).

Here, Paragraph 11(a) provides that relevant disputes "shall be resolved in accordance with the NASD's Code of Arbitration Procedures." (Lipman Decl. Ex. B at 11.) It then goes on to provide a procedure if the NASD declines jurisdiction or the dispute is not eligible for submission to the NASD. "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." Contec, Corp., 398 F.3d at 208. Thus, the explicit inclusion of the NASD's Code of Arbitration Procedures clearly demonstrates intent to arbitrate. See Laumann v. Nat'l Hockey League, 989 F. Supp. 2d 329, 337 (S.D.N.Y. 2013) (finding an intent to arbitrate where the arbitration clause incorporated by reference the rules of the American Arbitration Association).

12

Moreover, the parties dispute not only who should decide arbitrability, but whether the issue herein falls within the scope of Paragraph 11(a) and the Agreement. Plaintiff provides that Paragraph 11(a) does not apply because it is limited to "[d]isputes arising from or under the terms" of the Agreement, and the Agreement does not contain an anti-retaliation provision.[4] (Pl.'s Opp. Br., Docket Entry 22, at 3.)

The FAA "expresses a liberal federal policy favoring arbitration agreements and . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 223 (2d Cir. 2001) (internal quotation marks and citation omitted). The Second Circuit has set out a three-part test in determining whether a dispute falls within the scope of an arbitration clause. First, a court must determine if the clause is broad or narrow. Id. at 224. Second, if the clause is narrow, "the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is

---

[4] Plaintiff instead argues that Paragraph 11(b), which contains an optional arbitration clause, applies. Contrary to Plaintiff's assertion, however, the Court cannot look to the provisions of Paragraph 11(b). Paragraph 11(a) makes clear that subparagraph b applies only if: (1) FINRA were to decline jurisdiction over the dispute; or (2) if the dispute is ineligible for submission to FINRA. Thus, until such instances occur, Paragraph 11(b) does not come into play.

13

somehow connected to the main agreement that contains the arbitration clause." Id. (internal quotation marks and citation omitted). Third, if the clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction of the parties' rights and obligations under it." Id. (internal quotation marks and citation omitted).

The Court finds that the arbitration clause in Paragraph 11(a) is broad. It allows for arbitration of all "[d]isputes arising from or under the terms of this Agreement between Registered Representative and Broker-Dealer . . . ." (Lipman Decl. Ex. B at 11.) This "evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement . . . ." Louis Dreyfus Negoce S.A., 252 F.3d at 225. In fact, courts have consistently held that language such as "arising from" an agreement exemplifies a broad arbitration clause. See id. at 225-26; see also Ferrari N. Am., Inc. v. Ogner Motor Cars, Inc., No. 02-CV-7720, 2003 WL 102839 *3 (S.D.N.Y. Jan. 9, 2003) ("'[T]he prototypical broad arbitration provision' is one that makes arbitrable '[a]ny dispute, controversy or claim arising under or in connection with [an agreement].'" (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (alterations in original));

14

In re Winimo Realty Corp., 276 B.R. 334, 338 (Bankr. S.D.N.Y. 2001) (describing a similar clause as "classically broad" (internal quotation marks and citation omitted)).

Thus, the arbitration clause here is broad and the presumption of arbitrability applies. Accordingly, "there is a presumption of arbitrability, and the burden shifts to 'the party resisting arbitration to demonstrate that the disputed issue is collateral' to the [Agreement]." In re Winimo Realty Corp., 276 B.R. at 338 (quoting Prudential Lines, Inc. v. Exxon Corp., 704 F.2d 59, 64 (2d Cir. 1983)). "But even if the disputed issue is collateral, the matter will be arbitrated if it 'implicate[s] issues of contract construction or the parties' rights and obligations under' the [Agreement]." Id. (quoting Louis Dreyfus Negoce, S.A., 252 F.3d at 228-29 (alterations in original)). In other words, "[a]ny legal claims that 'touch matters' covered by an agreement containing a broad clause 'must be arbitrated.'" Etransmedia Tech., Inc. v. Nephrology Assocs., P.C., No. 11-CV-1042, 2012 WL 3544805, at *6 (N.D.N.Y. Aug. 16, 2012) (quoting Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 654 (2d Cir. 2004). "In deciding whether a claim touches matters covered by an agreement, a court must 'focus on the allegations in the complaint rather than the legal causes of action asserted.'"

15

Id. (quoting Collins & Aikman Prods. Co. v. Building Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995)).

The allegations in Plaintiff's Complaint pertain to alleged retaliatory actions, particularly including limitation of Plaintiff's territory. The Agreement itself covers issues such as Plaintiff's employment status and territory. (See generally Lipman Decl. Ex. B.) Moreover, Plaintiff has not overcome the presumption. Although the Agreement does not explicitly cover retaliation or discrimination, Plaintiff has not pointed to any other separate arrangement on such issues.

Finally, the Court can find no cases suggesting that Congress intended these claims to be nonarbitrable, nor is there any merit to Plaintiff's argument that the provisions of Paragraph 11(a) terminated upon the termination of Plaintiff's employment. (See Pl.'s Opp. Br. at 6.) Certainly, Plaintiff is correct that the Agreement states that "[u]pon termination of the employment relationship between [Defendant] and [Plaintiff], this Agreement automatically terminates." (Lipman Decl. Ex. B at 10.)

However, the Supreme Court has held that there is "a presumption in favor of post-expiration arbitration of matters and disputes 'arising out of the relation governed by the contract.'" CPR Inc. v. Spray, 187 F.3d 245, 255 (2d Cir. 1999) (quoting Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 204,

16

111 S. Ct. 2215, 2224, 115 L. Ed. 2d 177 (1999)).  A post-expiration dispute arises out of the contract if: (1) it "'involves facts and occurrences that arose before expiration;'" (2) the "post-expiration action 'infringes a right that accrued or vested under the agreement;'" or (3) "'under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." Id. (quoting Litton Fin. Printing Div., 501 U.S. at 205-06, 111 S. Ct. at 2225, 115 L. Ed. 2d 177); see also Newspaper Guild/CWA of Albany v. Hearst Corp., 645 F.3d 527, 530 (2d Cir. 2011).

Here, alleged retaliatory acts involved events prior to Plaintiff's termination.  Moreover, the broad language of Paragraph 11(a) suggests that it survives expiration, as it pertains to any disputes arising from or under the Agreement between the parties herein without apparent limitation.

Accordingly, the Court GRANTS Defendant's motion.


[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For the following reasons, Defendant's motion to dismiss is GRANTED and Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September __18__, 2014
       Central Islip, NY